**William E. LAWSON, Trustee in Bankruptcy of Ernest L. Paolini and Hildegarde Paolini, Plaintiff,**

v.

**LIBERTY NATIONAL BANK AND TRUST COMPANY, Defendant.**

**No. CIV–81–588E.**

United States District Court,
W. D. New York.

March 10, 1982.

Ralph C. Hardesty, Buffalo, N. Y., for plaintiff.

Robert Schaus, Buffalo, N. Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is an appeal from an order of the Bankruptcy Court that a judgment lien recovered by the defendant-appellant Liberty National Bank and Trust Company ("the Bank") did not attach to certain real property of the debtors and that said lien was therefore void as against the trustee and, further, that two exemptions were allowed as to such property in the aggregate amount of $15,000 under section 522(d)(1) of the Bankruptcy Code.

The issues before me on this appeal concern the date of attachment of the Bank's judgment lien and the number of exemptions the debtors may rightfully claim as to such property.

The Bank, the Trustee and the debtors have stipulated to the following facts: in March 1976 the debtors, Ernest L. and Hildegarde A. Paolini, husband and wife, executed and delivered their guarantee for the payment of any and all of the obligations of Eronic, Inc. to the Bank; the Bank made a demand for payment under said guarantee October 9, 1979; shortly thereafter, on October 17, 1979 Ernest conveyed to his wife, for nominal consideration, his interest as a tenant by the entireties in the couple's residence; on December 4, 1979 the Paolinis were served with a summons and complaint by the Bank demanding judgment in the amount of $14,528.77 based on the guarantee; on December 21, 1979, during the process of negotiation between the debtors' attorney and the Bank's attorney, Hildegarde, without consideration, conveyed title to the residence to her daughter, Darlene Leone; the Bank obtained a default judgment against the Paolinis January 25, 1980, which was docketed that same day; on May 13, 1980 Leone reconveyed title to the residence back to the Paolinis, again without consideration; on May 16, 1980 the Paolinis filed the deed and later that day filed a joint petition in bankrupt-

cy, under Chapter 7, claiming the aforesaid two exemptions as to the residence; and the residence is encumbered by a valid first mortgage in the amount of $6,341.75 held by First Federal Savings and Loan Association of Buffalo and by a voidable judgment lien against Ernest Paolini.

The Bank contends that the judgment lien is not avoidable by the trustee under 11 U.S.C. § 547(b) because it arose January 25, 1980, more than 90 days prior to the filing of the Chapter 7 petition. The debtors assert that the lien did not take effect until the date of the transfer to them of the property from Leone, that date being within 90 days of filing, and that the Bank's lien is avoidable by the trustee under the above-cited provision. The trustee also maintains that the Bank's lien attached at the time of the recording of the reconveyance to the Paolinis on May 16, 1981. Consequently, the lien may be avoided under section 547(b) as a transfer within 90 days of filing of the Chapter 7 petition.

In his Memorandum Opinion, Judge Creahan found, as stipulated by the parties, that the conveyance by Hildegarde Paolini to her daughter was fraudulent as to the Bank under section 273–a of New York's Debtor and Creditor Law. The judge did not find, however, that the fraudulent nature of the transaction automatically gave rise to a lien on the property under section 278, subd. 1 of the Debtor and Creditor Law without the taking of the affirmative steps set forth therein.[1]

The Bankruptcy Court looked to New York's Civil Practice Law and Rules ("CPLR") § 5203 which grants a judgment creditor a lien to the extent of the "interest of the judgment debtor in real property, against which a money judgment may be enforced." This focused his analysis on the extent of the Paolinis' interest as of Janu-

ary 25, 1980, the date of the docketing of the judgment. Despite the fraudulent nature of the transaction, Judge Creahan held that the conveyance effectively divested Hildegarde A. Paolini of her interest in the property, until the reconveyance in May 1980.

From my review of the record and authorities, appellant correctly asserts that its lien attached January 25, 1980 at the time it docketed its judgment against the Paolinis. While the Bankruptcy Court is correct in its statement that a conveyance in fraud of creditors vests both legal and equitable title in the grantee, it does so only for purposes of defining the relative rights of other third parties and the parties to the fraudulent transaction. *Zim v. Cohen*, 221 A.D. 341, 223 N.Y.S. 424, 431 (2d Dept. 1927); *T.G.W. Realties v. Long Island Bird Store*, 151 Misc. 918, 272 N.Y.S. 602, 608 (S.Ct., N.Y.Co.1934). The property remains with the debtor for purposes of defining the relative rights of the defrauded creditors *vis-a-vis* the grantor. *In re Luftman*, 245 F.Supp. 723 (S.D.N.Y.1965).

In *Luftman*, shortly before the docketing of the judgment of the first creditor, the debtor had conveyed his residence to his mother. Some six months later, a second creditor obtained judgment against the debtor. In the interim, the first creditor had obtained a judgment setting aside the conveyance of the residence as fraudulent. Prior to execution, however, the debtor filed a petition in bankruptcy and the property was liquidated by the trustee. The second debtor argued to the bankruptcy court that the conveyance had divested the debtor of his interest in the property until it was set aside. Because judgment creditors share equally in a debtor's property acquired *after* the docketing of judgment, he submitted that he was entitled to a pro

---

1. That section provides:

"Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser

    a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

    b. Disregard the conveyance and attach or levy execution upon the property conveyed."

rata share of the proceeds of the residence. The court disagreed and stated:

"A creditor may treat a fraudulent conveyance as if it had never been made and immediately attach or levy execution on the property conveyed. Or, as [the first creditor] did, he may first 'have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim.' N.Y. Debtor & Creditor Law, Consol. Laws, c.12, § 278(1). In practice, to pursue the first alternative (*which clearly assumes that there is a lien on the property*) may be unwise; the property may bring far less than its worth if sold at a judicial sale and with its title clouded by the allegedly fraudulent transfer. Often, therefore, a creditor will elect to proceed 'in equity' by voiding the transfer first and thereafter levying on the property." *Luftman, supra*, at 725 (emphasis added).

Whatever the method employed by the creditor, he retains a lien in the transferred property. New York courts have ruled similarly that the lien attaches at the time of docketing regardless of the fact that title to the property is facially lodged elsewhere. *Glassman v. Glassman*, 309 N.Y. 436, 442, 131 N.E.2d 721 (1965); *Feuer v. Schaller*, 115 Misc. 229, 187 N.Y.S. 530 (S.Ct., Kings Co. 1921); *Wilkinson v. Paddock*, 11 N.Y.S. 442, 446 (Sup. 4th Dept.), *aff'd* 125 N.Y. 748, 27 N.E. 407 (1890). *Also see, Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295 (2d Cir. 1927).

The Bankruptcy Court and the parties have cited *New York Jurisprudence* in support of their respective positions. The court specifically relied on that source for the proposition that a conveyance in fraud of creditors is not *void ab initio* but merely voidable. *See* N.Y.Jur. Fraudulent Conveyances, § 86 at p. 508. The court thus reasoned that the creditor's failure to take the affirmative steps provided in section 278 of the Debtor and Creditor Law prior to the filing of bankruptcy prevents it from acquiring a lien on the transferred property and thus leaves the Bank in this instance with no remedy in that proceeding other than as a general creditor.

However, section 86 does not support such a result. To the contrary, it presumes that the defrauded creditor retains his rights as a judgment lien holder:

"That a fraudulent transfer is stated to be void as to creditors merely means that the rights of creditors are not affected by the transfer, that creditors may, notwithstanding the transfer, avail themselves of all remedies for collecting their debts out of the property or its avails, and that in pursuing those remedies they may treat the property as that of the debtor as though the transfer had not been made."

Section 125 of the treatise explains further that the:

"[R]eal property of a debtor which has been transferred by him in fraud of creditors still remains, as to the creditors, the debtor's property, so that the lien of the creditor's judgment attaches to such real estate, and, notwithstanding the conveyance, he may elect to stand upon his lien and summarily sell the land upon execution." 24 N.Y.Jur. Fraudulent Conveyances, § 125, at p. 549.

Failure to pursue its remedies does not divest the creditor of its lien. The lien arises upon filing of the judgment, not by virtue of section 278. That section does no more than set forth the means by which he can pursue the transferred property to obtain payment. The Bank filed its judgment January 25, 1980, and was entitled to the rights accorded a judgment lienholder under the Bankruptcy Code as of that date.

█ In view of this holding, I need not decide the merits of the Bank's objection to the number of exemptions granted the debtors under 11 U.S.C. § 522(d)(1). If I were required to do so, I would affirm the allowance of two exemptions. The property subject to exemptions under section 522(d)(1) is that property owned by the debtors at the time of the filing of the petition. *See, White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924). Thus, to the extent of the equity remaining after satisfaction of the Bank's lien, two exemptions may be taken.

For the foregoing reasons, the order of the Bankruptcy Court is hereby ORDERED reversed as to the Bank's status as a judgment lienor as of January 25, 1980.